FILED
2021 Oct-15  AM 08:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BRIDGET ANITA CUMMINGS,** } <br> } <br> **Plaintiff,** } <br> } <br> **v.** } <br> } <br> **COMISSIONER,** } <br> **SOCIAL SECURITY** } <br> **ADMINISTRTAION,** } <br> } <br> **Defendant.** } | **Case No.: 2:20-cv-01230-ACA** |

## **MEMORANDUM OPINION**

Plaintiff Bridget Cummings appeals the decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.     PROCEDURAL HISTORY

Ms. Cummings applied for a period of disability, disability insurance benefits, and supplemental security income on February 26, 2019, alleging disability beginning on February 25, 2019. (R. at 102, 115). The Commissioner initially denied Ms. Cummings' claims (*id.* at 120–126), and Ms. Cummings requested a

hearing before an Administrative Law Judge ("ALJ") (*id.* at 127–128). After holding a hearing (r. at 16–33), the ALJ issued an unfavorable decision (*id.* at 16–33). The Appeals Council denied Ms. Cummings's request for review (*id.* at 1–6), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c).

## II.     STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Cummings had not engaged in substantial gainful activity since her February 25, 2019 alleged onset date. (R. at 21). The ALJ found that Ms. Cummings' history of hydrocephalus, status post shunt placement, and headache disorder were severe impairments, but that her essential hypertension and hyperlipidemia were non-severe impairments. (*Id.* at 21–23). The ALJ then

concluded that Ms. Cummings does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (*Id.* at 23).

After considering the evidence of the record, the ALJ determined that Ms. Cummings had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.976(b) except that she faced some additional physical, mental, and environmental limitations.  (R. at 23).  Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Cummings was able to perform her past relevant work as an administrative clerk and a hospital admitting clerk.  (*Id.* at 27).  The ALJ also found that other jobs existed in in significant numbers in the national economy that Ms. Cummings could perform, including cashier II, routing clerk, and sales attendant.  (*Id.* at 28).  Accordingly, the ALJ determined that Ms. Cummings had not been under a disability, as defined in the Social Security Act, from her alleged February 25, 2019 onset date through the date of the decision.  (R. at 28).

**IV.   DISCUSSION**

Ms. Cummings argues that the court should reverse the Commissioner's decision because the ALJ did not properly evaluate the opinion of her treating neurologist, Dr. Robert Pearlman.  (Doc. 14).

4

The regulations governing how the Commissioner evaluates medical opinions changed for claims filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because Ms. Cummings filed her applications for benefits in February 2019, the Commissioner argues that the new regulations apply to the ALJ's consideration of Ms. Cummings' claims. (Doc. 15 at 6–15). Ms. Cummings does not challenge the applicability of the new regulations to the ALJ's review of Dr. Pearlman's opinion. (*See* doc. 14 at 8–21). Therefore, the court assumes that the new regulations control the analysis.

Under the revised regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s). . . ." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* at §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and therefore, the ALJ must explain how he considered those factors. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may,

but is not required to, explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Dr. Pearlman completed a physical capacities evaluation in support of Ms. Cummings' disability applications. (R. at 389). Dr. Pearlman explained that Ms. Cummings' chronic migraines and shunt would cause a number of limitations. For example, Dr. Pearlman opined that in a normal workday, Ms. Cummings can lift or carry ten pounds occasionally and five pounds frequently. (*Id.*). He also opined that in an 8-hour workday, Ms. Cummings can sit for one hour and stand or walk for one hour. (*Id.*). Dr. Pearlman also stated that Ms. Cummings can occasionally grasp, twist, and handle, but she can only rarely push or pull, climb stairs or ladders, balance, engage in fine manipulation, bend or stoop, reach overhead, work around environmental problems, or operate a motor vehicle. (R. at 389). Dr. Pearlman also concluded that Ms. Cummings can never work with or around hazardous machinery. (*Id.*). Finally, Dr. Pearlman opined that Ms. Cummings would miss three days of work per month. (*Id.*).

Dr. Pearlman also completed a clinical assessment of pain form. (R. 388). Dr. Pearlman indicated that Ms. Cummings' pain is present to such an extent as to be distracting to adequate performance of daily activities or work. (*Id.*). He also noted that physical activity would greatly increase Ms. Cummings' pain to such a degree as to cause distraction from tasks or total abandonment of them. (*Id.*). And

Dr. Pearlman stated that Ms. Cummings' side effects from prescribed medication would be expected to severely limit her effectiveness due to distraction, inattention, and drowsiness. (R. at 388).

The ALJ found that Dr. Pearlman's opinion is not persuasive. Specifically, the ALJ explained that:

> His opinion consists of a series of checked boxes on a form. The Lines on the form allowing for an explanation are generally blank or devoid of additional information supporting his opinion. This provider's treatment is not consistent with the provided opinion, as it consistently notes that [Ms. Cummings'] Botox injections have significantly reduced the frequency and intensity of her headaches. Therefore, his opinion is no[t] persuasive because it is not consistent with the record as a whole, in particular, his own treatment notes.

(R. at 25).

The court finds that this explanation satisfies the ALJ's regulatory obligation to articulate how he considered the supportability and consistency of Dr. Pearlman's opinion.

With respect to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Here, the ALJ found that Dr. Pearlman's opinion was not well-supported because Dr. Pearlman checked boxes on a form and with the exception of stating what conditions caused Ms. Cummings' limitations, provided no additional explanation

7

for the identified limitations. (R. at 25). The ALJ also noted that Dr. Pearlman's treatment notes explained that Ms. Cummings' headaches had improved with Botox treatment, and therefore the limitations he identified in his opinion were not consistent with those objective findings. (*Id.*). Accordingly, the court finds that the ALJ properly evaluated the supportability of Dr. Pearlman's opinion.

With respect to consistency, the regulations provide that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ found that Dr. Pearlman's opinion was inconsistent with his own treatment notes and the record as a whole. (R. at 25). Substantial evidence supports this determination.

First, as he did with the supportability of Dr. Pearlman's opinion, the ALJ noted that the opinion is not consistent with Dr. Pearlman's treatment notes because those notes documented Ms. Cummings' Botox treatments as reducing the frequency and intensity of her headaches. (R. at 25; *see* R. at 381, 391).

Second, the ALJ explained that Dr. Pearlman's opinion was not consistent with the evidence as a whole. (R. at 25). Certain medical evidence in the record provides support for the ALJ's finding that Dr. Pearlman's opinion is not consistent with the record as a whole. For example, around the time she was receiving Botox treatment for her headaches, Ms. Cummings saw other providers for high blood

8

pressure and other complaints, but she denied having headaches. (R. at 409–410, 414–415; *see also* R. at 290, 381, 391). In addition, the ALJ considered and found "mostly persuasive" a state agency consultant's prior administrative medical finding which conflicted with Dr. Pearlman's opinion. (R. at 26; *see* R. at 94–99). As for nonmedical evidence, the ALJ noted that Ms. Cummings' March 2019 function report documented that she engages in a number of activities, including listening to music, drawing, going to church and social gatherings, eating out with family, paying bills, and cleaning. (R. at 25; *see* R. at 237–244).

Ms. Cummings claims that other objective medical evidence in the record supports and is consistent with Dr. Pearlman's opinion. (Doc. 14 at 15–17). Specifically, Ms. Cummings points to Dr. Pearlman's treatment notes which indicate that other medication had not successfully treated Ms. Cummings headaches and treatment notes from other providers documenting complaints of chronic headaches, all of which pre-date her Botox injections. (*Id.* at 15; *see* R. 348, 384, 386). Ms. Cummings also cites treatment notes from her April 25, 2019 visit with Dr. Kristin Riley during which Ms. Cummings reported that she had not had much relief from the initial round of Botox injections and that she experienced nausea and vertigo associated with her headaches. (Doc. 15 at 16, quoting R. at 373). The ALJ specifically considered Dr. Riley's treatment notes, and the ALJ found that these findings contradicted those of Dr. Pearlman three months later when Ms. Cummings

reported a good response to prior Botox injections because they had reduced the frequency and duration of her headaches. (R. at 25, citing R. 373, 391).

At its core, Ms. Cummings' argument asks the court to impermissibly "decide facts anew, reweigh the evidence, or substitute" the court's "judgment for that of the" Commissioner. *Winschel*, 631 F.3d at 1178 (quotation marks omitted); *see also Crawford*, 363 F.3d at 1158–59 ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (quotation marks omitted). Accordingly, the court will not disturb the ALJ's articulated findings concerning the persuasiveness of Dr. Pearlman's opinion.

Ms. Cummings also argues that the ALJ erred because he should have found Dr. Pearlman's opinion persuasive based on other factors in 20 C.F.R. §§ 404.1520c(c), 416.920c(c), namely his relationship with Ms. Cummings and his specialization. (Doc. 14 at 17). But the plain language of the regulations did not require the ALJ to analyze Dr. Pearlman's opinion against these factors. The regulations require an ALJ to address supportability and consistency, and they obligate an ALJ to consider other factors only when multiple opinions are equally well-supported and consistent. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("We may, but are not required to, explain how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section. . . ."); *see also*

20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) ("When we find that two or more medical opinions . . . about the same issue are both equally well-supported...and consistent with the record . . . . , we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section. . . ."). Here, the ALJ did not find that two or more medical opinions were equally well-supported and consistent with the record. Therefore, the ALJ was not required to articulate how he considered any factors beyond supportability and consistency.

## V.   CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Cummings' applications for a period of disability and disability insurance benefits. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this October 15, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE